Good morning your honors and may it please the court I'm Marla Zink on behalf of Leroy Charles and I'm going to try and reserve four minutes for rebuttal please. Federal Rule of Evidence 414 does allow the government to admit acts of other sexual abuse in a criminal trial and in district court but that rule does not change rule 403, it does not usurp constitutional due process, it does not circumvent the statute of limitations, and it doesn't erase the other federal rules of evidence. In fact as this court said in LeMay, it is not a blank check that entitles the government to admit whatever evidence it chooses. Here we have a trial that focused on Mr. Charles's character, on acts that weren't on trial and couldn't be on trial, on the character of sex abusers generally, and on the nature of the victims in this case. What became secondary was whether Mr. Charles committed the five charged acts here and that's because of several trial court rulings. So first there was uncharged acts evidence admitted, there was a bolstering expert witness who bolstered and vouched for both the charged and uncharged acts witnesses, the government was allowed to submit testimony as to negative impacts of alleged abuse on the victims, again so collectively it was these errors that encouraged a verdict on improper bases, on prejudice, on sympathies, on emotions, on uncharged acts, and on Mr. Charles's character. It was not only the content of these of the this evidence but it was the order in which it was presented and its volume and proportion in comparison to the five charged acts evidence. I think I guess I start out by suggesting isn't the admission of any of this evidence subject to an abuse of discretion review? That's correct it is an abuse of discretion review. So any one of the many issues that you presented in front of us, and I got that there were five, all of those issues are generally something the district court makes a decision? Yes. That's generally correct. And if I am to undo that decision, what must I find for this abuse of discretion? Well what we have to find is that, for example, the trial court gave the blank check that the LeMay court said. Just a minute, give me a rule, not not general statement, give me a rule, give me a case that suggests the standard by which I review each of these decisions to the district court. Now I ask you that question because I was a district judge once and I constantly hated the court of appeals because they always wanted to impose their own idea of a good time and they weren't there. They were reading the record only. They didn't know what was going on except they read the record and they had predisposition to do whatever they wanted to do in a particular case. And so it was always my wonderful idea that abuse of discretion was the standard, which to me meant I had to be totally out of the ballpark. In other words, to suggest what I did would be good, would be relevant, would be allowed. And then when I took that standard and I applied them to each one of these and then I applied them to what Judge Layton did as it related to each of these and to the decisions that he made and to the reasons he gave for them, while I may have sat here on appeal like the ones I was scared of, I may have thought Judge Layton was out to lunch, but if there was anything sound about his decision based on his reasoning, I had to affirm it, correct? Well, I think there has to be no reasonable basis for the decision and if the court looks . . . Well, frankly, if it's legal, which I couldn't find any of these decisions which weren't legal, then at that point it's really a discretionary decision by the district court. I couldn't find any case dead on which would suggest that the decisions he made were totally illegal and therefore abuse. So now I'm weighing the circumstances of this decision, right? Well, I would disagree with the court's characterization. I mean, we've decided to . . . Tell me one illegal, one case for illegality that he made on any one of these five decisions. Well, I'll give you at least two. All right, give me two. For the ER-403 rulings, I point the court to Calhoun, which we cited in our briefing, which talks about . . . So the idea with ER-403, which is subject to both the 404B evidence and the 414 evidence, is that the decision of the jury can't be due to emotions. We can't be looking at evidence for prejudices and sympathies. But just a minute. The good old district judge has to make a 403 analysis long before the jury makes their analysis, and he has to make a decision based on the considerations under 403, which would suggest was it going to be prejudicial or not, based against was it probative or not. Correct. And it seems to me that good old Judge Layton did that every time. Well, and this is where you led me perfectly to the second case that I was going to cite to you, which is Curtin, which says that when making that 403 determination, this is an en banc decision of this court, the judge, the district court, needs to be looking at the full record of that evidence, and that Judge Layton did not do here. Although, excuse me, counsel, in Curtin, Curtin said that the district judge had to read or see the material, and so in Curtin, it was writings, and the judge didn't review all of the writings, and in fact, one of the writings that the judge did not review referenced a sex act with an animal that had absolutely nothing to do with the case that was before the district judge. And so in that case, the language is, you know, read or see, which suggests that if it's a video or pictures, the judge has to look at it before he or she makes the decision, as well if it's something that can be written. But in this case, this was testimony, and so is it your suggestion that Curtin holds for the proposition that the judge would have to hear the direct and the cross of the witnesses before he or she can make the decision? Well, I think they need at least more than was done here, and something substantially more like LeMay in the case of live witnesses. I agree with you, Curtin was not about live witnesses, but what happened here was there was a pretrial ruling before the court had heard any of the evidence, either the charged or uncharged acts, that gave a blank check to the prosecution to put on Sally, an uncharged act witness, as the first witness, and Emily as the last witness to bookend. Although, so is it fair to say, though, that you read Curtin as well, that Curtin does not, that Curtin does not restrict the court from making a decision on proffers as to what the evidence will be? Is that fair to say? I think it would have to be a proffer that was stronger than what was offered in this case. I mean, this was a written motion, heard pretrial in the span of a couple pages, and the court's ruling is a paragraph or two. I mean, they certainly hadn't heard the weight of the charged acts evidence, let alone the uncharged acts evidence. But can you point to any of the evidence, any of the uncharged conduct evidence that occurred that was different from what the proffered was? I mean, in Curtin, the court seemed concerned that, look, there was evidence that nobody really expected to come in, the district judge wasn't aware of, and now the court, you know, the jury heard this. But I understand the argument that it shouldn't have been admitted for some, for other, for a variety of reasons. But with respect to Curtin, Curtin, your argument is that the judge had to review it before making a decision. And at the end of the day, is it fair to say, though, that you agree the judge can do that by proffer? Your dispute now is that, well, the proffer wasn't complete enough. Well, I would say at least the proffer wasn't complete enough. I'm not sure it's clear that they can do it by proffer. But at least as what happened in LeMay was that the court heard at least the charged act evidence first before deciding the ER-403 analysis, which requires the court to look at the necessity of it, the similarity, and factors like that, redundancy, prejudice, all that, which is impossible to know when you haven't seen the charged acts evidence. And that's why in LeMay, the first part of the trial was focused on charged acts. And it wasn't until the second part of the trial that the jury heard these uncharged acts. Here, the jury was led with uncharged acts. But so is it your view that the court then cannot just make a decision on 404B prior to the beginning of a trial, and the court now is required to wait until what? Until all of the evidence is in, that the government puts all their evidence in, and then they can decide on the 404B? I think the court needs to at least have a good record in order to make a 403 determination. And here we did not. We did not have pages and pages, hours of Sally's testimony talking about hundreds of acts of alleged abuse. We didn't have the connection that Carly Monker, the expert who came in, needed to be brought in to testify to make the link between the charged and the uncharged acts evidence. That wasn't before the trial court and the pretrial ruling. Again, there was this negative impacts evidence that also came in related to the uncharged acts and the charged acts. This became a trial about Mr. Charles's life, about Mr. Charles's character, and not about the five acts of abuse. If you put yourself in the role of the jury sitting here, the way the evidence was presented, again, lead with Sally, no limiting instruction. Then Carly Monker, the expert testimony that links. Was the limiting instruction requested? Limiting instruction was given, yes, was requested and was given before Emily, the last witness to testify, who was also an uncharged acts. It was the only time it was asked for, right? That was the only time it was given. Was it ever asked for and denied? No, I don't believe that it was. But there was a clear objection here and an understanding that a limiting instruction would be given. The way the prosecution was allowed to present its case here was that blank check that LeMay says cannot be given. And also, I'd remind the court that in addition to the evidentiary standards here, we have a cumulative due process claim. And I think that these, collectively, when one looks at the trial, this was not a fair trial for Mr. Charles. And I'll reserve the remainder for rebuttal. Thank you. May it please the court, Charlene Kosky for the United States. Do you agree with Ms. Zink that the court here determined whether the uncharged acts evidence would be admissible under 414 before it knew what the evidence was as to the charged acts? No, I do not agree with that. And the record shows that, well, first I'll point out that LeMay actually does specifically reference proffered testimony and the cases that are cited in the briefs all concern proffered testimony. Also, here, the proffered testimony was detailed. The most inflammatory parts of the testimony were included in the proffers. It included five pages and trial brief dedicated describing the victim witness testimony in motion introducing evidence under 413 and 414. Ms. Kosky, you have a manner of speaking down and I don't hear you too well. So what I'd like you to do is to tell me what portion of the record rebutts what I understood to be the claim that the judge ruled on the admissibility of the uncharged testimony before he knew what the evidence would be as to the charged testimony. That would seem to me, if it's true, to be a violation of the LeMay case rules. Well, the charged and uncharged testimony was described in the proffers submitted to the court prior to the trial and he also took oral argument. Therefore, would you kindly tell me where in the record I may find a detailed proffer of the charged testimony so that I can see whether or not Ms. Zink was accurate in what she said? In sealed exhibit 6? Yes. Yes, that's filed. The ER, the sealed volume number 6 contains the trial briefings. Okay. Thank you. But I would also add that prior to trial, the district court also asked for oral argument and heard descriptions of the testimony again. Excuse me, counsel. The victims, both charged and uncharged, at the end of the testimony were asked a question about what effect the abuse and assault had on their lives. Is that right? That is correct. And what's the relevance of that testimony? For argument's sake, suppose someone says, and I think many did, you know, this was horrible, it severely affected my life, it caused perhaps drug use, a terrible, terrible result for the rest of their life. What's the relevance of that to the charge conduct? Well in this case What element did it go to? In this case, it went to their credibility and it also rebutted attacks that the defense was making. So in this case, the expert also testified that these, she testified about general symptoms that are shown by children who are victims of sex abuse. And a lot of what she described fit with what the victims in this case said that they had suffered. I would also add that the drug abuse, the fact that, you know, CK had behavioral problems, those are things that the defense also emphasized in front of the jury to try to suggest that the victims were lying. We're just trying to get the clock to start because we've had you up here for ten minutes and we don't have a clock. Go ahead. Okay. So it was relevant, in this case, it was relevant to helping to establish the credibility of the victims. Is that just relying then on what the expert said with respect to particular characteristics that people of abuse have? In this case, yes. And Antone allows for that. Antone recognizes that an expert can testify generally about behavioral characteristics common in victims of sex abuse. And in this case, that was the purpose of eliciting the testimony, was to say, well, that and in addition, it was also something brought up by defense in trying to attack them. And the response to that is that, no, these children are not just, they're not, if they're using drugs, some of them were, some of them weren't. Defense suggested that PM had a drinking problem, suggested that CK had behavioral problems, that some of the kids were addicted to drugs, and that these are all reasons that you can't believe them. And the counter to that is an expert who comes in and says, no, actually, generally, victims of sex abuse tend to experience these types of things. And then the jury can look at that and say, well, maybe these symptoms suggest that I can't believe them, but maybe they're also consistent and suggest that they're telling the truth. And then that was something that the jury could weigh. And I would also add that in these kinds of cases, the harm that occurs, this is in like a medical case, if someone has a physical injury and you come in and you describe the symptoms and you can see these things and you have doctor's testimony helping to show that, yes, these are symptoms that are consistent with this type of injury. In these types of cases, the injuries are more often psychological. We don't have eyewitness testimony. We don't have forensic evidence. We have people who were assaulted, usually a very long time ago, as children who are trying to recall these injuries. And they're injuries that cannot be seen.  Symptoms that they've suffered over time is also helpful to allowing the jury to weigh that evidence. The question was very general, what effects it has, because it obviously can have different effects on different people. Correct. Well, in this case, I mean the expert, some of the effects that were introduced at trial that the victims testified were included drug use, trust issues, self-cutting, moving around frequently to avoid being found by their uncle, fear and anger, trouble sleeping, confusion about sex. The expert testimony was that common effects seen in adults and children who have been victims of sex abuse includes drug use, self-harm, not sleeping, medical conditions, aggression, increased involvement with criminal and behavioral justice system and not attaching to other people. So I hope that does that answer your question? I can't get past the idea that the expert's testimony is, I've seen a lot of children and they tell the truth when they testify this way. Therefore, these witnesses are telling the truth when they testify this way. It has to be, no matter how you interpret it as being general testimony, it is vouching, isn't it? What you just described is vouching, but that is not what happened here. Nowhere in the record has a palant identified any testimony from our expert where she said generally victims in these types of cases tell truth about this or in this case these victims. She said nothing about these victims and she said nothing about truth telling. She didn't vouch for the victims in this case. The language that's being cited in the briefs cites cases completely unrelated to this to show what vouching is. There's been no testimony identified here that shows vouching actually occurred and it did not. Your point is all she's saying is that children testify this way generally, so therefore, in this particular case, you shouldn't look skeptically on the testimony given in this case. Actually, the expert in this case never described how victims testify, never. She didn't describe the way victims testify. Not testify, but tell their stories. She didn't talk about how they usually tell their stories. She testified about symptoms they often show. She did not offer any testimony that said anything about the way victims testify or tell stories. Go ahead. I would also just point out on the 413 and 414 issue that in this case, the district court heard briefing and argument on the four or three factors that LeMay identifies. I also point out that LeMay, again, involved proffered testimony. I also draw this court's attention to the legislative history which LeMay considered which describes the scope of Rule 14 and 414 evidence. I will just read briefly to you. It says, such cases, such as child abuse cases, require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration. In such cases, there is compelling public interest in admitting all significant evidence that will shed some light on the credibility of the charge and any denial by the defense. I would submit that the evidence that was admitted under Rules 413 and 414 in this case did exactly that. The court considered it, looked at the proffered, and actually excluded CC's testimony so that that was not sufficiently similar to be included. The record is clear that the court took its job seriously, expressed reservations about the scope of this rule and the implication of this rule, but looked at it, heard argument, looked at the proffers, excluded the testimony it thought was not sufficiently similar. In opening arguments, both parties emphasized the distinction between the charge and uncharged conduct. A limiting instruction was read during the trial on two occasions with the first three and then also ZJ had a portion of his testimony that ended up not being a charged offense and the instruction was read again after that that the jury could still consider it for purposes of uncharged. And then in closing arguments, the parties again emphasized the distinction between the charge and uncharged conduct. And then before the jury went out, they were again instructed on how to distinguish between the charge and uncharged conduct. So the court did everything, it explicitly considered the LeMay factors. I would also point out that in LeMay, the factors weren't yet established. So I know Appellant mentioned that this need to hear the testimony before deciding on it. In that case, that was just something that happened, but in this case, you actually did have the proffer testimony and you did actually have application of the four or three factors articulated in LeMay before that evidence was presented to the jury. Then you had limiting instructions and everything else that LeMay says you need to do on an abuse of discretion standard. And I would say that the points that are being made about the curtain arguments about not needing to hear testimony, I would also point out that is an argument that wasn't made before the district court. And so this court would actually review that on plain air standard. Considering that LeMay involved proffer testimony, that the court did everything that LeMay instructs it to do, you don't get to an abuse of discretion and you certainly don't get to plain air. Is there . . . Your Honors, I'd point the court to ER 373 to start with to compare what was proffered pre-trial. If you compare that with ER 107, which is three paragraphs, I'm sorry, four paragraphs that summarize what the testimony is going to be about what turns out to be, although this was not clear pre-trial, the very first witness that the government submits. And what the government ends up eliciting testimony from Sally is about several acts that were not described in this proffer in the written briefing. Rubbing, breathing, page ER 374, Sally's attempts to get away, 374 and 376, Sally's emotional state during this time. That's not in the proffer. Again, 376, emotions and exchanges between Sally and Mr. Charles, allegedly at this time. 382, they started admitting pictures of the home where this is alleged to have happened. Not in the proffer. You're really talking about what did Sally talk about that wasn't in the proffer. I think the more important case or instance for you, at least as I listen to Judge Bea's question, is that the district court didn't even know what the real acts were before the un, if you will, uncharged acts were offered. That's correct. And that's the key distinction between here and LeMay. Not only did the court not know. She said that we'd find that. And frankly, I focused a little bit, I don't know why you could say that. It seemed to me the district court knew exactly what the charged acts were. Well, I think it depends how you define exactly. I mean, I think it had a summary of what the charged acts were from the indictment. But it's not what it's got to have. It needs, it would need to in order to compare. To me, it seems to me there's no question it had a summary. It's no question it had more than a summary on some of the charged acts. And it's no question that on others of the charged acts, there's nothing that came in it didn't know about. My question to you is, what are you suggesting they didn't know before allowing the uncharged acts to be presented? Well, first of all, they would have to know both of those things, both the uncharged and the charged in order to be able to compare, right? That's the essence of the 403 and the 414 inquiry in LeMay in those rules and in the case law that we've cited. So they'd have to know both. So just knowing one wouldn't be sufficient. In LeMay, what they knew was the full testimony because the judgment was reserved. The court's ruling was reserved until after . . . All you're suggesting is LeMay, it was all in writing and so Judge and we have what we have in LeMay. Here we're going to have testimony by people that we're going to have to think about as it comes in and that's why I thought my colleague Judge Hayes' questions were pretty reasonable. In that kind of a system, it does not seem to me that one can suggest that every, that I've got to have a whole hearing and hear all of the testimony and the cross and everything before I know whether to let the testimony in. Well, with all due respect, Mr. Charles was on trial for his life here. He's now . . . I understand he was on trial for his life, but we don't put the Honorable Layton on the bench without the full confidence in him that he'll be able to do what he needs to do. And in your saying, he did not. And so I'm trying to figure out what did he need to do. I know of no precedent that would suggest that there was going to be testimony that's going to come in, that I have to hear that whole testimony, pro and con, before I decide whether it's let in. Well, Curtin does say that you have to know the full extent of the evidence. But not of speaking evidence. Well, that wasn't what was at issue there. And perhaps the Court doesn't want to go that far here, but I don't think it needs to go that far here because, again, what the Court had in LeMay was at least had reserved judgment until hearing the evidence that was presented on the charge acts, which not only forced the Court to hear that evidence, but forced the jury to hear that evidence first, instead of leading with this very detailed description of what happened to Sally. Although, is it your view that before the Court can make an analysis, make a decision on 404B, it has to be made during the trial, that the Court then has to hear all of the government's case before, or do they have to hear the government's case and the defense case before they can make a decision on 404B? I don't think it has to be during trial, but it has to at least be on a more detailed proffer than what happened here, unless the government's evidence at trial is going to match that proffer. So if it doesn't have to be, if it can be before trial, then what is required? Is the district judge then required to say, all right, government, you need to give me a summary of every witness, I need a written summary of every witness, what do you think the testimony is going to be of every witness, I need the defense, I need a summary from you of all the, I want a series of all your cross-examination questions, I want a summary of all the points you're going to make, and then the judge just look at those two things by himself or herself and say, well, I think it's okay, I think it's not? I mean, is that, because we've never required that before, is that, in your view, what is required, that the court has to hear everything before it makes a decision? Well, I don't think that would be unreasonable, but I don't think the court has to require it, but the court should be reserving judgment if it cannot tell from the proffer what the basis of that is going to be. What if the court thinks, I can tell from the proffer, what if it just says, I've seen the indictment, I've done the motion to suppress, I've done some of the other motions, I have a pretty good idea of what this type of case is, and so I'm going to make my decision on the 404B based on what I have, and I'm going to rule in advance so the lawyers know what's going to come in, so they can tell the jury in the opening. If you wait to the very end, if you wait, and no one's allowed to mention it, and so the judge hears the government's case and then hears the defense case, is it then in rebuttal that the government then gets up with these other uncharged acts and the jury has no idea what they're about, no one's ever referred to them before? Is that your suggestion as to how it has to be? Well, it could be a rebuttal witness, and there are cases where it is a rebuttal witness, but no, I mean, if the court rules pretrial, then they're subject to review by this court. It can't be a rebuttal witness because the defendant wouldn't be denying uncharged acts. I'm sorry, can you repeat that? A rebuttal witness is somebody who rebuts testimony that's been given. The defendant wouldn't be giving testimony regarding uncharged acts. Right. And in the case of the expert witness is where we've seen it used as rebuttal witnesses. And, you know, where the ruling is made pretrial, it's subject to review by this court. This court now has the full evidence before it, which the trial court did not, and should be looking at whether the way that this was presented was a fair trial to Mr. Charles, whether it satisfied ER 403, and whether the trial court abused its discretion when it ruled pretrial on a summary that then didn't match the evidence that was presented. Your learned friend, Ms. Kosky, referred me to Exhibit 6, if I've got that right. Sealed Exhibit 6 as being the proffer? Excerpts of Record 6. Now answer a question that Judge Smith put you. What in that proffer was missing so that the defendant was prejudiced when the uncharged conduct came in? Correct. So referring back to the start of my reply here, if you compare Sealed Excerpt 107 is four paragraphs referring to what the testimony is going to be for one witness, and instead we get 50 pages, and I'd refer the court again, ER 373, 374, 374, and 376. 376, 382, 385, this is all emotional testimony. Testimony as to the effect on Sally, testimony as to the exchange between Sally and Mr. Charles, none of this is in the government summary that was presented. So I don't think that this matched the proffer, and that's the risk that the Court runs in deciding this pretrial, and Mr. Charles was denied his fair trial here for all the reasons presented here and in the briefing. If the Court has no further questions, I'll reserve. Thank you. Thank you. Okay. Thank you very much. Thanks to both counsel for a very good presentation, and the case of Charles v. USA will be marked submitted, and we will recess until tomorrow morning at 9 o'clock.
judges: Bea, N.R. Smith, Hayes